IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

B&P COMPANY, INC., *et al.*,  :

        Plaintiffs,

                   Case No. 3:14-cv-232

      v.  :

                   JUDGE WALTER H. RICE

INTERNAL REVENUE SERVICE,

        Defendant.  :

---

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON PLAINTIFFS' FOIA CLAIMS (DOC. #16);
JUDGMENT TO ENTER ACCORDINGLY; TERMINATION ENTRY

---

Plaintiffs B&P Company, Inc. ("B&P"), and James L. Wright filed suit against

the Internal Revenue Service ("IRS"), alleging violations of the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiffs seek injunctive relief in the

form of an order requiring the IRS to produce certain records, as well as attorneys'

fees and costs.

This matter is currently before the Court on Defendant's Motion for

Summary Judgment on Plaintiffs' FOIA Claims, Doc. #16.  The IRS maintains that

Wright has a substantial ownership interest in B&P, and is the subject of an

ongoing criminal investigation for tax evasion.  The IRS argues that, for this

reason, many of the documents that Plaintiffs have requested are exempt from

disclosure.  Other documents are no longer available due to the passage of time.

I.      **Relevant Law and Procedural History**

Under the Freedom of Information Act ("FOIA"), federal agencies are required to respond promptly to requests for copies of agency records.  5 U.S.C. § 552(a)(3)(A).  The agency must make a "good faith effort" to search for documents responsive to a public records request, using "methods reasonably expected to produce the requested information."  The search must be "tailored to the nature of the request."  *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 547 (6th Cir. 2001).

The agency may withhold only those records that fall under one of the nine FOIA exemptions set forth in 5 U.S.C. § 552(b).  These exemptions are to be narrowly construed.  *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012).  Three of the nine exemptions are potentially implicated in this case.  Disclosure is not required for matters that are:

> **(3)** specifically exempted from disclosure by statute (other than section 552b of this title), if that statute--
> **(A)(i)** requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> **(ii)** establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
> **(B)** if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.
>
>                        * * *
>
> **(5)** inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;
>
>                        * * *
>
> **(7)** records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement

records or information (A) could reasonably be expected to interfere with enforcement proceedings . . .

5 U.S.C. § 552(b).

If the agency determines that one of the exemptions prohibits disclosure, it must notify the person requesting the records of the right to appeal the decision within the agency. 5 U.S.C. § 552(a)(6)(A)(i). If that appeal is denied, the person who requested the records may seek judicial review. The district court has jurisdiction to order the production of any agency records improperly withheld, 5 U.S.C. § 552(a)(4)(B), and may assess attorney fees and litigation costs reasonably incurred by any complainant who substantially prevails. 5 U.S.C. § 552(a)(4)(E)(i).

On judicial review, the agency has the burden of establishing the adequacy of its search for relevant records. The court's inquiry focuses on the reasonableness of the search, not the potential existence of additional documents that might satisfy the request. *Rugiero*, 257 F.3d at 547-48.

The agency also has the burden of proving that a particular exemption applies. *Vaughn v. United States*, 936 F.2d 862, 866 (6th Cir. 1991). Because this generally involves a pure question of law, these cases are typically resolved on summary judgment. *Rimmer*, 700 F.3d at 255. Absent evidence of bad faith on the part of the agency, detailed affidavits in support of the claimed exemptions are usually sufficient. However, the court also has the option of conducting an *in camera* review of the relevant documents if needed. *Id.* In *Rugiero*, the court held:

3

> Unless evidence contradicts the government's affidavits or establishes bad faith, the court's primary role is to review the adequacy of the affidavits and other evidence. If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the government's position.

257 F.3d at 544 (internal citations and quotations omitted).

### A. B&P Company, Inc.

On January 30, 2014, Plaintiff B&P submitted an FOIA request to the IRS for "all copies of any Revenue Agent Reports, bearing B&P Company, Inc.'s name and/or account number through the years 1990 through 2013." Doc. #1-1, PageID#8. According to Gail Minauro, Senior Disclosure Specialist with the IRS, a Revenue Agent Report ("RAR") is typically issued at the end of a civil tax audit, and is sent to the taxpayer to explain any adjustments made to the tax return at issue. Doc. #16-2, PageID#135.

On March 4, 2014, IRS Disclosure Manager Ron Mele responded that, although the IRS was in possession of 41 pages that were responsive to B&P's request, it was withholding them all under 5 U.S.C. § 552(b)(7)(A), because the report was compiled for law enforcement purposes, and production could interfere with enforcement proceedings. Mele also stated that the RAR was exempt from disclosure "under FOIA subsection (b)(3) supported by IRC Section 6103(e)(7), because release would impair federal tax administration."[1] Doc. #1-2, PageID#10.

---

[1] That section of the Internal Revenue Code provides that, "[r]eturn information with respect to any taxpayer may be open to inspection by or disclosure to any

4

B&P appealed, Doc. #1-3, PageID#11, but the IRS Appeals Office upheld the

decision to withhold the documents.  Doc. #1-4, PageID##17-18.

**B.    James L. Wright**

Plaintiff James L. Wright allegedly has a substantial ownership interest in

B&P.  On February 19, 2014, Wright submitted an FOIA request to the IRS for

numerous documents related to a December 23, 2013, letter from the IRS

demanding $505,779.03 in restitution in connection with his 1999 conviction for

tax evasion in *United States v. James L. Wright*, No. 1:97-cr-64 (S.D. Ohio).  Doc.

#1-5, PageID##19-20.  Requested documents include:

1.    All copies of IRS Form 9984 entitled "EXAMINING OFFICER'S
      ACTIVITY RECORD" for the years 1913 through 2013 pertaining to
      Mr. James Wright and the restitution claimed with the enclosed
      document.

2.    Any and all examination work papers used to calculate the restitution
      amount set forth on the attached document, including, but not limited
      to:
      a.    Administrative Lead Sheets
      b.    Risk Analysis work papers
      c.    Internal Control Lead Sheets
      d.    Fraud Awareness Lead Sheets
      e.    Income Probe work papers
      f.    Any and all summonses issued and subsequent responses
      g.    Any and all Information Document Requests.

3.    A complete copy of the system of records identified as "Treasury/IRS
      26.006," Form 2209, Courtesy Investigations-Treasury/IRS, bearing
      Mr. Wright's name and/or account number for the years 1913 through

---

person authorized by this subsection to inspect any return of such taxpayer if the
Secretary determines that such disclosure would not seriously impair Federal tax
administration."  26 U.S.C. § 6103(e)(7).

2013 related to the Restitution claimed due on the attached document.

4.   A complete copy of the records, documents and information maintained in a system of records identified as "Treasury/IRS 46.002," Criminal Investigation Management Information System (CIMIS) and case files- Treasury/IRS, bearing Mr. Wright's name and/or account number for the years 1913 through 2013 related to the Restitution claimed due on the attached  document.

5.   A complete copy of Mr. Wright's "IMF TRANSCRIPT COMPLETE" for the years 1913 through 2013 related to the Restitution claimed due on the attached document.

6.   All copies of the Lien Files (open and closed) identified as "Treasury/IRS 26.009", bearing Mr. Wright's name and/or account number through the years 1913 through 2013 related to the Restitution claimed due on the attached document.

Doc. #1-5, PageID##19-20.

IRS Disclosure Specialist Paula Curren denied Wright's request in full, citing FOIA exemption (b)(5), FOIA exemption (b)(7)(A), and FOIA exemption (b)(3) as supported by Internal Revenue Code § 6103.  Doc. #1-6, PageID##25-26.  Wright appealed, Doc. #1-7, PageID#29, but the IRS Appeals Office upheld the decision. Doc. #1-8, PageID##30-32.

**C.   Judicial Review**

B&P and Wright then filed the above-captioned lawsuit, seeking judicial review of the IRS's denial of their FOIA requests.  They seek an order requiring the IRS to provide the requested documents, along with attorneys' fees and costs. The IRS has moved for summary judgment, arguing that the material facts are not

6

in dispute, and that it is entitled to judgment as a matter of law. Doc. #16. The Court agrees.

## II.     Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support

7

of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* Civil 3d § 2726 (1998).

In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). If it so chooses, however, the court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.    Analysis**

**A.    B&P's FOIA Requests**

As noted above, B&P has requested "all copies of any Revenue Agent Reports, bearing B&P Company, Inc.'s name and/or account number through the years 1990 through 2013."  Doc. #1-1, PageID#8.  The IRS maintains that the only document responsive to this request is a 41-page draft Revenue Agent Report ("RAR") that covers tax years 2007-2009.  B&P does not challenge the adequacy of the search, but rather the withholding of the document.

The IRS first argues that the draft RAR is not responsive to B&P's request because it is not a final RAR.  B&P maintains, however, that the request should be broadly construed to encompass all existing RARs, whether in draft or final form. *See Dayton Newspaper, Inc. v. Dep't of Veterans Affairs*, 510 F. Supp. 2d 441, 447 (S.D. Ohio 2007) ("Courts have ruled that an agency should broadly construe the subject matter of a FOIA request.").  Although the Court agrees that the request is broad enough, the IRS has nevertheless demonstrated that the draft RAR is exempt from disclosure for at least three reasons.

**1. FOIA Exemption 5**

The IRS first argues that the draft RAR is exempt under 5 U.S.C. § 552 (b)(5), which protects from disclosure "inter-agency or intra-agency memorandum[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  Included in this category are documents protected by the deliberative process privilege, *i.e.*, predecisional intra-

9

agency communications reflecting the agency's deliberative process. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). *See also Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("The deliberative process privilege protects materials that are both predecisional and deliberative.").

It is beyond dispute that the draft RAR is predecisional; it is not a final determination of B&P's tax liability for the years in question. Kathy Enstrom, Special Agent in Charge of the Cincinnati, Ohio, Field Office of Criminal Investigation for the IRS, explains in her Declaration that the draft was prepared to estimate B&P's potential tax liabilities for the years in question, but is based on incomplete information. It is "merely a preliminary computation prepared to obtain data for a pre-prosecution report." Doc. #16-1, PageID##89-90.

Disclosure of the draft RAR would also expose the IRS's deliberative process. Gail Minauro stated in her Declaration that the draft RAR was "prepared solely for computational purposes in support of the Service's pre-prosecution report with respect to Wright." Doc. #16-2, PageID#137. She explains that the draft RAR provides insight into the agency's deliberative process concerning possible criminal action to be taken against Wright. *Id.*

B&P does not dispute that the draft RAR is predecisional or deliberative in nature. It argues, however, that exemption (b)(5) does not apply because the draft RAR is a civil document related only to B&P, and the IRS has failed to assert sufficient facts from which it could be inferred that this RAR is in any way relevant to a criminal investigation involving Wright. The Court rejects this argument.

Minauro stated in her Declaration that a freeze hold had been placed on B&P's audit "because James L. Wright is under criminal investigation and *he has an ownership interest, either direct or indirect, in B&P*."  Doc. #16-2, PageID#137 (emphasis added).  In addition, in its Memorandum in Support of Summary Judgment, Defendant stated that the two plaintiffs were related in that Wright "has a substantial ownership interest" in B&P.  Doc. #17, PageID#185.  Moreover, as the IRS points out in its reply brief, Doc. #22, PageID#255, unrelated plaintiffs would have no reason to file a combined FOIA suit.

The Court finds that the IRS properly withheld the draft RAR, which is exempt from disclosure under FOIA exemption (b)(5), because it is protected by the deliberative process privilege.

### 2.  FOIA Exemptions (b)(3) and (7)(A)

The IRS also maintains that the draft RAR is exempt from disclosure under 5 U.S.C. § 552(b)(7)(A), because it was compiled for law enforcement purposes and its production could interfere with enforcement proceedings, and under 5 U.S.C. § 552(b)(3), because its release would "seriously impair Federal tax administration."  *See* 26 U.S.C. § 6103(e)(7).  The Court agrees.

Minauro explained that the draft RAR concerning B&P's potential tax liabilities for tax years 2007-2009 was prepared solely in connection with the IRS's criminal investigation of Wright.  Doc. #16-2, PageID#137.  The RAR identifies specific adjustments to B&P's tax returns, providing insight into the

company's transactions, tax accounting and other matters that the IRS suspects

are related to Wright's criminal activity. *Id.* at PageID#138.

According to Kathy Enstrom, disclosure of this document would enable

Wright:

> to determine the scope, limits and direction of the Service's
> investigation, including the particular transactions under scrutiny, and
> the extent of the Service's reliance on that evidence.  This knowledge
> would alert co-plaintiff Wright to what information has, and by
> implication, has not been obtained by the Service, including the extent
> of the Service's knowledge of plaintiff's financial accounts and
> transactions.  The disclosure of this information would afford co-
> plaintiff Wright the opportunity to construct defenses, conceal
> accounts or transactions currently unknown to the Service, or
> otherwise tamper with evidence which has not yet been gathered.

Doc. #16-1, PageID##89-90.  In addition, disclosure would give Wright "earlier

and greater access to information about the Service's criminal investigation of him

than he would otherwise be entitled to receive and deprive the Government of

reciprocal discovery in the event the criminal investigation culminates in a criminal

prosecution." *Id.* at PageID#90.  For these reasons, according to Minauro, a "Z-

freeze" code was entered indicating that a criminal investigation of Wright was

underway, and that the draft RAR should not be disclosed because it could

compromise that investigation.  Doc. #16-2, PageID##137-38.

The Court concludes that the IRS has satisfied its burden of proving that

disclosure of the draft RAR, which was compiled *solely* for law enforcement

purposes,[2] could interfere with enforcement proceedings, and would seriously

impair Federal tax administration.  Therefore, this document is also exempt from

disclosure under 5 U.S.C. §§ 552(b)(3) and (b)(7)(A), as supplemented by 26

U.S.C. § 6103(e)(7).

### B.    James Wright's FOIA Requests

As noted above, James Wright requested six categories of documents

related to restitution demanded by the IRS in connection with his 1999 conviction

for tax evasion with respect to tax years 1992, 1993 and 1994.  The 1999

Judgment did not set forth a restitution amount; it merely ordered him to pay

"restitution in the amount of taxes determined by the Internal Revenue Service to

be owing."  Doc. #87, PageID#15, in Case No. 1:97-cr-64 (S.D. Ohio).

On December 23, 2013, Wright received a letter from the IRS indicating that

he owed $505,779.03 in restitution.  Doc. #1-5, PageID#23.  This is the letter

that prompted his FOIA request.  The IRS denied Wright's request in full, citing 5

U.S.C. §§ 552(b)(5), (b)(7)(A), and (b)(3).  Doc. #1-6, PageID##25-26.  Wright

---

[2]    B&P argues that the RAR "was a civil audit document that does not change character merely because the IRS decides to open a criminal investigation."  Doc. #19, PageID#209.  However, Minauro's Declaration clearly indicates that the RAR was prepared solely in connection with the criminal investigation of Wright.  Doc. #16-2, PageID#137.  Moreover, FOIA exemption 7(A) applies regardless of whether the enforcement is civil or criminal in nature.  *See Vento v. IRS*, 714 F. Supp. 2d 137, 148 (D.D.C. 2010) ("Plaintiffs' assertion that a distinction should be drawn between civil and criminal enforcement of the Internal Revenue Code is incorrect. The Internal Revenue Code is a law and the IRS enforces it, no matter the ultimate nature of the proceeding brought against the taxpayer.").

does not challenge the applicability of these FOIA exemptions. Instead, he challenges the adequacy of the search.

According to Elizabeth Rawlins, an attorney in the Office of Chief Counsel of the IRS, the initial FOIA search turned up only records related to the more recent, ongoing criminal investigation of Wright, but those records were not responsive to Wright's FOIA request. In her Declaration, Rawlins explained that, after this lawsuit was filed, she conducted a separate search for records specifically related to the restitution order stemming from the 1999 Judgment.[3] Doc. #16-3, PageID##148-50.

Rawlins stated that records responsive to Wright's first three categories of requested documents, if they still existed, would be found either in the agency's criminal investigation files, or in the civil examination files associated with the earlier investigation of Wright. *Id.* at PageID#150. Special Agent Westendorf, who is handling the current criminal investigation, told Rawlins that he had searched for files from the earlier criminal investigation, but found none. Anthony Palumbo, Records Management Specialist for the IRS, confirmed that any records related to the criminal investigation that resulted in the 1999 conviction would have been destroyed in 2009 in the ordinary course of business, pursuant to the

---

[3]  An agency's post-litigation search for production of documents responsive to an FOIA request "cannot serve as proof that the agency conducted an unreasonable search initially or acted in bad faith, for such a rule would punish those agencies that attempted to correct past inadequate searches." *People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 179 (D.D.C. 2011).

IRS's 10-year record retention policy.  Doc. #16-3, PageID##150-51.  Rawlins also attempted to locate civil examination files responsive to Wright's request, using the standard procedures for locating such case files.  However, she found none because, as with the criminal investigation files, those files have been destroyed pursuant to the 10-year record retention policy.  *Id.* at PageID##151-53.

With respect to Wright's fourth request, for restitution-related records maintained in the IRS's Criminal Investigation Management Information System ("CIMIS"), Rawlins was able to locate one record.  She redacted personal information of IRS employees and a third-party taxpayer, and then provided this document to Wright.  *Id.* at PageID##153-54.  In response to Wright's fifth request, Rawlins provided Wright with an IMF transcript for tax years 1988 to 2013.  Wright's sixth request seeks lien files related to the restitution order.  Rawlins explained that, under the law as it then existed, no such liens could have arisen from the 1999 Judgment; therefore, no responsive records would exist.  *Id.* at PageID##154-55.

The IRS maintains that these search efforts were adequate in that it used "methods reasonably expected to produce the requested information."  *Rugiero*, 257 F.3d at 547.  Wright, however, argues that the search was inadequate for two reasons, and that genuine issues of material fact preclude summary judgment on the question of whether documents that show how his restitution amount was calculated are still in existence.

15

First, Wright points to a document entitled "Department of Justice (DOJ) History Sheet," which, according to the Supplemental Declaration submitted by Elizabeth Rawlins, Doc. #22-1, logs activity by employees of the IRS's Criminal Restitution unit between August 31, 2012, and October 7, 2014, concerning Wright's restitution obligation.  Doc. #19-4, PageID#246.  This document was produced by the IRS in response to Wright's FOIA request.  Doc. #19-2, PageID#230; Doc. #22-1, PageID#262.

This activity log contains five entries.  On August 31, 2012, an employee identified as "John" "requested and received amount owed from CI," and added this information to the database.  On November 30, 2012, an employee identified as "S. Fox" printed and filed the judgment, and input a 5016C letter.  On December 16, 2013, "Carolyn" filed a copy of that letter, which notified Wright that he owed $505,779.03 in restitution.  On October 1, 2014, John (identified as employee #65791, see Doc. #22-1, PageID##262-63) received a fax from another employee showing a list of years and amounts Wright owed towards civil tax liabilities.  He noted that "[t]his appears to be [a] NOT Restitution case.  All years listed have no balance dues."  He emailed Sheila Faulhammer to see what he could find out about restitution owed.  The final entry, dated October 7, 2014, indicates that employee number 49660 "added $505779.03 back into DB as restitution owed per direction of mgr, Anna Thomas.  Removed NOT Restitution notation from folder and DB entry.  Printed new summary."  Doc. #19-4, PageID#246.

16

Wright interprets this activity log to mean that the IRS did not calculate or impose any restitution related to the 1999 Judgment until sometime after August 31, 2012.  He then argues that, because these calculations could not have taken place unless the IRS referred to certain documents in his file, documents responsive to his FOIA requests *must* still be in existence.  In the alternative, Wright argues that these recent calculations would have generated new documents responsive to his FOIA requests.

Second, Wright argues that the IRS's search was insufficient because the IRS failed to question the IRS employees identified in the DOJ History Sheet concerning their knowledge of documents responsive to his FOIA requests.  The IRS denies that it had a duty to question these employees or search their files.  Nevertheless, in response to Wright's argument, Elizabeth Rawlins did contact the employees, but none knew of any documents responsive to Wright's requests.  Doc. #22-1, PageID##263-65.

In her Supplemental Declaration, Rawlins also confirmed that, contrary to Wright's suggestion, these employees did not calculate the amount of restitution he owed.  On August 31, 2012, they merely accessed a computerized database of restitution debts and retrieved a record showing that Wright owed $505,779.03 as of that date.  Documents no longer exist to show how that restitution amount was calculated.  *Id.* at PageID##263-64.

Rawlins's Supplemental Declaration is corroborated by documents filed in Wright's criminal case.  Pursuant to Federal Rule of Evidence 201(b)(2), the Court

takes judicial notice of the contents of a July 20, 2004, Report on Offender Under
Supervision, filed by Wright's Probation Officer.  Doc. #88, PageID##17-18, in
Case No. 1:97-cr-64.  In that report, the Probation Officer recommended that
"Wright's term of probation be allowed to expire on July 30, 2004[,] despite the
fact that he continues to owe the Internal Revenue Service $501,479.03" in
restitution.[4]  "According to IRS officials, they will continue to collect funds from
Mr. Wright despite the expiration of his probation term." *Id.*

This report corroborates the IRS's position that the amount of restitution
owed by Wright was calculated prior to July of 2004, and explains why
documents responsive to Wright's FOIA requests no longer exist.  It also explains
the CIMIS document produced by the IRS, and cited by Wright, indicating that he
had fulfilled all of the terms and conditions of his probation as of July 30, 2004.
Doc. #19-3, PageID##237-38.

It is not entirely clear why certain records referenced in the October 1,
2014, entry in the DOJ History Sheet appear to indicate that Wright owed no
restitution, or why the $505,779.03 had to be "added back" into the database on
October 7, 2014.  Doc. #19-4, PageID#246.  Nevertheless, these entries are
insufficient to create a genuine issue of disputed fact concerning the adequacy of
the IRS's search for documents responsive to Wright's FOIA request.  Wright has
pointed to no evidence to support a finding that the restitution amount was initially

_____

[4]  The slight difference between what was owed in 2004 and what was owed in
2012 may be attributed to interest and penalties that have continued to accrue.

calculated on or after August 31, 2012, or that any other documents responsive to his FOIA requests were still in existence at the time he made his request.

Based on the evidence presented, the Court concludes that Defendant's search for records responsive to Wright's FOIA requests was adequate and reasonable. The IRS used "methods reasonably expected to produce the requested information." *Rugiero*, 257 F.3d at 547. The fact that the IRS was unable to find any more documents appears to be due solely to the operation of the agency's 10-year records retention policy.

## IV.  Conclusion

For the reasons set forth above, the Court SUSTAINS Defendant's Motion for Summary Judgment on Plaintiffs' FOIA Claims, Doc. #16, in its entirety. Judgment shall be entered in favor of Defendant and against Plaintiffs.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: July 20, 2015

_____
WALTER H. RICE
UNITED STATES DISTRICT JUDGE